# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
JAN 2 3 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____M. VERDUZCO_____
DEPUTY CLERK

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Jeremy Scott Danielson | ) | Case No. |
| | ) | |
| | ) | 1: 15 MJ 00012 SKO |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 21, 2014__ in the county of __Fresno__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 39A | Aiming the beam of a laser pointer at an aircraft or its flight path. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Johnnie R. Santiago, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 15, 2015

_____
*Judge's signature*

City and state: Fresno, California

Sheila K. Oberto, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ISSUANCE OF ARREST WARRANT

I, Johnnie R. Santiago, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Sacramento Division, being duly sworn, depose and state as follows:

### A. Agent's Expertise

1. I have been employed as a Special Agent of the FBI since August 1987, and am currently assigned to the Sacramento Division, Fresno Resident Agency (RA). As a Special Agent of the FBI, I investigate federal criminal violations related to violent crimes, including violations of Title 18, United States Code, Section 39A, aiming the beam of a laser pointer at an aircraft or its flight path. During my years as a Special Agent, I have investigated crimes related to Counterterrorism, Domestic Terrorism, Drug Trafficking, Kidnapping, Bank Robbery, Extortion and Fugitives. I have gained knowledge and experience through training at the FBI academy and over 27 years of everyday work related to these investigations.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute arrest warrants issued under the authority of the United States. I have educated myself regarding laser cases by reading articles posted on the internet and by reviewing past cases investigated by the FBI. I have used hand held laser pointing devices and laser levels used in construction work in professional and personal applications. I also know there is a requirement for laser devices to have a danger warning label printed and affixed on all laser devises, and operating instructions accompanying laser devices that I have seen or reviewed, including instructions to avoid exposing lasers to eyes as the laser could cause serious injury to the eye.

### B. Nature of Affidavit

3. This Affidavit is based upon my own personal knowledge of the events set forth herein, as well as information provided to me by other law enforcement personnel. The purpose of this

1

affidavit is to support a complaint charging JEREMY SCOTT DANIELSON with violating Title 18, United States Code, Section 39A, aiming the beam of a laser pointer at an aircraft or its flight path. My knowledge of the underlying investigation is derived from interviews of contacts, victims, potential witnesses and/or suspects, my review of law enforcement reports prepared in this case, and discussion of this case with assisting agents and/or officers. I have detailed only the facts that I believe are necessary and appropriate to establish the probable cause mandatory for an authorization of the arrest of the subject identified hereinafter.

### C. Statutory Authority

4. Section 39A of Title 18 of the United States Code prohibits knowingly aiming the beam of a laser pointer at an aircraft or its flight path.

### D. Facts in Support of Probable Cause Determination

5. On September 21, 2014, at 12:55 a.m.,[1] during routine patrol, California Highway Patrol (CHP) aircraft Air 43 had just taken off from the Fresno Yosemite International Airport and was climbing to flying altitude between the airport and downtown Fresno when it was struck through the left side pilot window with a green laser approximately six times at an altitude of approximately 4,001 to 5,000 feet above ground level. The beam of light caused CHP Officer/Pilot Brian Laret to experience temporary flash blindness. Due to the intensity of the green light which illuminated the cockpit, Pilot Laret had to orient the aircraft to try to block the beam from entering the windows, in order to maintain control of the aircraft. Flight Officer Ryan Kunkel experienced watering eyes and irritation as a result of the laser strike.

6. Officer Kunkel utilized the MX-15 camera which was mounted to the aircraft's left wing to determine that the beam originated from the area of Alluvial and Clovis Avenues in Clovis, California. As Air 43 headed toward the laser beam, the laser continued to track the aircraft

---

[1] All references to dates and times herein are to approximate dates and times.

AFFIDAVIT OF SA SANTIAGO          2

approximately three times. Once the area of the beam's origin was identified, Pilot Laret positioned Air 43 for an orbit over an apartment complex at 722 North Clovis Avenue in Clovis. Pilot Laret recognized the apartment complex as the same location where he and CHP Officer Mike Crain had been struck by a green laser from the pool area on August 14, 2014, at 9:29 p.m.

7. Using the aircraft's thermal camera, the CHP officers began searching the pool area to try to locate the suspect. After about two orbits of the complex, the laser beam struck Air 43 five to six more times. Officer Kunkel was able to determine the beam originated from the southwest corner of the apartment complex and contacted the Clovis Police Department (CPD) for ground assistance. While waiting for CPD to respond, Air 43 was struck five to six more times.

8. Using the thermal camera, Officer Kunkel saw an individual walk quickly away from a truck located in the southwest corner of the complex along Spruce Avenue from where the last beam originated. The suspect walked into an alley way between the apartment buildings towards a stairwell. A few minutes later, Officer Kunkel saw the suspect walk out of the stairwell and back towards the truck. The suspect stood towards the back left side of the truck bed. Utilizing the thermal camera, Officer Kunkel maintained visual surveillance of the suspect. Officer Kunkel observed three more laser beam strikes from the wide angle lens set up in a picture in the picture view. Officer Kunkel observed the suspect move towards the driver's side door and sit in the driver's seat.

9. CPD officers advised Air 43 that they were in the apartment complex, heading toward the suspect's location. Just prior to CPD's arrival at the suspect's truck, Air 43 was struck two more times from the same location. Officer Kunkel directed CPD units to the suspect who was leaning inside the passenger door of the truck from which the beams were originating.

10. CPD Officers Craig Aranas and John McGrory contacted the suspect at the truck. Officer McGrory asked DANIELSON whether he had any weapons. When DANIELSON responded he might have a pocket knife, Officer McGrory conducted a pat down search and located a black laser

AFFIDAVIT OF SA SANTIAGO                            3

pointer with a green laser pointer and a flashlight in DANIELSON's right pants pocket. The officers identified the suspect as JEREMY SCOTT DANIELSON by means of his California driver's license.

11. When Officer McGrory asked DANIELSON why he had a laser pointer in his pocket, DANIELSON said he had been playing with his cat earlier in the night and kept it in his pocket. DANIELSON said he was outside, because he was emptying his cat's litter box. When advised that the CHP airplane had been struck with a green laser, DANIELSON said the laser pointer had been clipped onto the outside of his pants and he might have accidentally pushed the button and it could have shined upward. DANIELSON was detained until Officers Laret and Kunkel were able to land Air 43 and arrive on scene.

12. Upon arriving, CPD Officer Chris Taliaferro recognized DANIELSON from a prior laser incident. On August 14, 2014, Officer Taliaferro had responded to the same apartment complex after he was dispatched there to investigate the green laser strike of Pilot Laret. At that time, he encountered DANIELSON in the pool area of the complex and asked him whether he had observed anyone pointing a laser into the sky. DANIELSON told Officer Taliaferro he had not seen anyone pointing a laser but had seen three teen males walk through the apartment complex north bound. CPD officers did not locate any other suspects during that incident.

13. Officer Kunkel confirmed with DANIELSON that his information was correct on his driver's license and obtained his phone number and Social Security number from the report. When DANIELSON was advised why he was detained, he stated that he had not shone the laser into the sky.

14. Officer Kunkel took custody of the laser pointer which emits a green laser beam. The words "Laser 301" are etched on the laser device, which also bears a prominent danger warning. An internet search for the "Laser 301" resulted in a product match with photographs of a laser pointer that matched the seized laser pointer. The internet description of the Laser 301 indicates that the laser pointer is a green high-powered burning laser pointer with an output of 200 milliwatts (mW) and a range

AFFIDAVIT OF SA SANTIAGO                        4

of in excess of 6,000 feet. A laser device that emits a laser beam of 200 milliwatts exceeds the legally permissible limit for handheld laser devices by 40 times. The continuous wave length is 532nm and is battery powered with one 16340 battery. The photos depict the laser device pointing at a match stick and lighting it on fire.

15. On October 21, 2014, I later contacted DANIELSON at his residence about the laser incident on September 21, 2014. I advised DANIELSON that he was not under arrested nor detained, so he was free to leave. DANIELSON stated he never pointed a laser at any aircraft. He indicated that perhaps, while the laser was clipped on his pant pocket, he may have accidentally hit the button on the laser and "it just shot upward from my pocket and hit the plane." DANIELSON did not provide any other response as to how the laser could have hit the aircraft numerous times.

16. I know based on prior expert testimony that the laser beam emitted from the laser pointer used by DANIELSON could not have illuminated the cockpit of Air 43 unless it had directly intersected the cockpit window. Joshua Hadler, a physicist and Chief Laser Safety Officer at the National Institute of Standards and Technology (NIST) and a member of the American National Standards Institute's (ANSI) committee on laser safety, and Dr. Leon McLin, a research optometrist and vision scientist for the Air Force Research Laboratory and a member of the ANSI committee on laser safety, so testified at the trial of *United States v. Sergio Rodriguez and Jennifer Lorraine Coleman*, Case No. 1:13-CR-109-LJO, involving charges stemming from the lasing of law enforcement and Valley Children's Hospital helicopters.

E. **Conclusion**

Based upon the foregoing, I respectfully submit that there is probable cause to believe that JEREMY SCOTT DANIELSON did knowingly aim the beam of a laser pointer at an aircraft or its flight path, in violation of Title 18, United States Code, Section 39A.

////

Your affiant swears under penalty of perjury that the facts presented herein are true and accurate to the best of my knowledge.

_____
JOHNNIE R. SANTIAGO
Special Agent,
Federal Bureau of Investigation

SWORN TO BEFORE ME, AND SUBSCRIBED IN MY PRESENCE THIS __22__ DAY OF JANUARY, 2015.

_____
SHEILA K. OBERTO
United States Magistrate Judge

Reviewed and Approved as to Form and Content
This 20th Day of January, 2015

/s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant U.S. Attorney